IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00002-MR

| | |
|---|---|
| MARK MCLEAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM OF** <br> **DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 15] and the Defendant's Motion for Summary Judgment [Doc. 18].

**I.  BACKGROUND**

On March 14, 2018, the Plaintiff, Mark McLean ("Plaintiff"), protectively filed an application for supplemental security income under Title XVI of the Social Security Act (the "Act"), alleging an onset date of April 7, 1995. [Transcript ("T") at 97-98].  The Plaintiff's claims were initially denied on July 20, 2018, [id. at 142], and again denied upon reconsideration on April 8, 2019, [id. at 157].  On November 14, 2019, the Plaintiff amended his alleged onset date to April 1, 2018.  [Id. at 236].  On the Plaintiff's request, a hearing

was held on December 20, 2019 before an Administrative Law Judge ("ALJ"). [Id. at 20]. On February 27, 2020, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 20-32].

On November 5, 2020, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 4]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139

2

Case 1:21-cv-00002-MR   Document 23   Filed 09/07/22   Page 2 of 18

S. Ct. 1148, 1154 (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional

3

investigation and explanation." Mills v. Berryhill, No. 1:16-cv-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to

4

step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At

5

Case 1:21-cv-00002-MR   Document 23   Filed 09/07/22   Page 5 of 18

step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since April 1, 2018, his amended alleged onset date. [T. at 22]. At step two, the ALJ found that the Plaintiff has the following severe impairments: "obesity, traumatic brain injury, dysfunction of major joints, osteoarthritis, schizophrenia spectrum, affective disorder, anxiety disorder, obsessive compulsive disorder, and neurocognitive disorder." [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals

the Listings. [Id. at 23]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except lifting and carrying up to 10 pounds frequently and no more than 20 pounds occasionally, standing for about six hours, walking for about six hours, and siting for about six hours, for a total of eight hours in a workday with usual breaks every two hours. The claimant can also occasionally push and pull with the right upper and lower extremity. The claimant requires use of a stool and needs the ability to change positions at least one time per hour without leaving the workstation or losing productivity. The claimant cannot climb ladders, occasionally climb steps, occasionally balance, occasionally crouch, occasionally kneel, occasionally crawl, frequently use the right upper extremity for fine and gross manipulation, occasionally reach overhead with the right upper extremity, and frequently perform lateral and forward reaching with the right upper extremity. As for environmental restrictions, the claimant must avoid concentrated exposure to cold, humidity, wetness, vibration, noise, respiratory irritants, and hazards. The claimant is limited to unskilled work, defined jobs that can be learned in less than 30 days. The claimant can maintain concentration, persistence, and pace for two hour[] periods for simple, routine tasks. The claimant can have occasional interaction with the general public and must avoid high volume, fast production work jobs.

[Id. at 25].

At step four, the ALJ identified the Plaintiff's past relevant work as minister. [Id. at 31]. The ALJ determined, however, that the Plaintiff is

unable to perform past relevant work as actually or generally performed. [Id.]. At step five, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff is able to perform other jobs existing in significant numbers in the national economy, including production inspector, machine tender, and bench hand/packer. [Id. at 31-32]. The ALJ therefore concluded that the Plaintiff has not been "disabled" as defined by the Act since March 14, 2018, the date that the Plaintiff's application was filed. [Id. at 32].

## V. DISCUSSION[1]

As one of his assignments of error, the Plaintiff argues that the ALJ failed to fully account for the Plaintiff's mild limitations in interacting with others in the RFC assessment. [Doc. 16 at 11-12]. Specifically, the Plaintiff asserts that the ALJ included in the RFC a limitation that the Plaintiff can have "occasional interaction with others" but that the ALJ did not include or explain why she did not include a similar limitation for interacting with coworkers or supervisors. [Id. at 12-13].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

8

Case 1:21-cv-00002-MR   Document 23   Filed 09/07/22   Page 8 of 18

must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based in whole or in part on mental health impairments, the Social Security Rules and Regulations require an in-depth review and analysis of the plaintiff's mental health history. The Regulations set forth a mechanism for this type of review and documentation, known as the "special technique" to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8p; see also 20 C.F.R. § 404.1520a(b). The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p.

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing, or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

9

Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits his functioning. "These criteria represent the areas of mental functioning a person uses in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The Paragraph B criteria include the following: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. The ALJ uses the special technique to "evaluate the severity of mental impairments . . . when Part A of the Listing of Impairments is used." 20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s) … If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b)(1).

Further, Rule 96-8p provides that:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at step 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the

10

> sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p also explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertion levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, at step three, the ALJ concluded that the Plaintiff's mental impairments did not meet or medically equal the "Paragraph B" criteria in listings 12.02 (neurocognitive disorder), 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depression, bipolar, and related disorders), or 12.06 (anxiety and obsessive-compulsive disorders). [T. at 23]. The ALJ found at step three that the Plaintiff suffers from moderate limitations in understanding, remembering, or applying information; mild

limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. [Id. at 24]. With regard to interacting with others, the ALJ stated that:

> In regards to the second area of mental functioning, the claimant has a mild limitation in interacting with others. Although the claimant denies having many friends (Ex. 17F/4), he has a close relationship with family and eats supper with his parents (Hearing Testimony). Other social contacts include attending church twice a week (Ex. 8E/5). Moreover, while the claimant alleges being easily agitated (Ex. 8E/6), his subjective allegations are undermined by medical reports which show[] that he routinely presented with a pleasant, polite, and cooperative demeanor when interacting with treating/examining physicians (Ex. 3F/1, 15F/13, 16F/5, 18F/5, 20F/2, 22F/14, and 29F/5). Thus, he is no more than mildly limited in this area of mental functioning.

[Id.]. The ALJ then noted that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the "paragraph B" mental function analysis.

[Id. at 25]. It appears the ALJ sought to account for the Plaintiff's limitations in the four areas of mental functioning by finding in the RFC that the Plaintiff:

> [I]s limited to unskilled work, defined jobs that can be learned in less than 30 days. The claimant can maintain concentration, persistence, and pace for two hour[] periods for simple, routine tasks. The claimant can have occasional interaction with the general public and must avoid high volume, fast production work jobs.

[Id.]. The ALJ did not, however, include any limitation related to the Plaintiff's ability to interact with supervisors and coworkers.

In formulating the Plaintiff's mental RFC, the ALJ cited certain evidence of the record, but the ALJ's RFC assessment failed to explain "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; Mascio, 780 F.3d at 636. Regarding the Plaintiff's mild limitations in interacting with others, the ALJ stated only that:

> In considering the consultative exam findings and mental status exams performed by treating physicians, the undersigned finds that the claimant [is] limited to performing unskilled work and maintain[ing] concentration, persistence, and pace for two hour[] period[s] [and] simple, routine tasks that [are] not of a high volume and fast production pace. Additional limitations [are] not warranted for the claimant scored 27 out of 30 on the Montreal Cognitive Assessment (Ex. 23F/4). This is not suggestive of a significant cognitive impairment. The undersigned further notes that various mental status

> exams have shown the claimant's memory and cogniti[ve] functioning to be within normal limits (Ex. 9F/4, 11F/5, 12F/3, 22F/24, and 28F/77). While the claimant is alleging issues with concentrating, the severity of his allegations is also at odds with reports of the claimant appearing focused and alert (Ex. 11F/5, 15F/13, 18F/5, and 22F/24). *Nevertheless, the undersigned accommodates some of the claimant's allegations with respect to being easily agitated by limiting him to work that does not require more than occasional interaction with the general public.*

[Id. at 28-29] (emphasis added). Significantly, the ALJ failed to include in her RFC assessment any discussion as to how the evidence she cited supports her conclusion that that the Plaintiff is limited to "occasional interaction with the general public" but simultaneously requires no limitation in interacting with supervisors and coworkers.

"While the ALJ is not required to include a corresponding restriction to address interactions with each category of individuals—coworkers, supervisors, and the public—in her RFC determination . . . the burden is on the ALJ to make findings of fact and resolve evidentiary conflicts." Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019) (internal citations omitted) (remanding the ALJ's determination where the ALJ found that the Plaintiff had a "moderate limitation" in "interacting with others," limited the Plaintiff to "occasional public contact" in the RFC, and failed to explain why the RFC also excluded any limitation on interacting with supervisors and

14

coworkers); see also Russell v. Colvin, No. 1:14-cv-00203-MR-DLH, 2015 WL 3766228, at *4 (W.D.N.C. June 6, 2015) ("Although the ALJ's findings at step two and three may not require an RFC that imposes limitations on social functioning, the ALJ must at least provide a sufficient explanation in the decision to allow this Court to determine why no limitations as to social functioning were included in the RFC despite the ALJ's finding that Plaintiff has moderate difficulties in social functioning."); Ashcraft v. Colvin, No. 3:13-cv-00417-RLV-DCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) ("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain concentration, persistence or pace and such limitations are unaccounted for in the RFC, or their absence is unexplained in the analysis surrounding the ALJ's RFC determination, remand is required."). Here, however, the Court is left to speculate as to how the ALJ concluded that the Plaintiff can have only "occasional interaction with the general public" but requires no limitation in interacting with supervisors and coworkers.

The Defendant argues that the ALJ's conclusion that the Plaintiff can have "occasional interaction with the general public" but requires no

15

limitation in interacting with supervisors and coworkers is supported by the opinions of state agency psychological consultants Dr. Keith Noles and Dr. Vigita Reddy. [Doc. 19 at 20-21]. Dr. Noles and Dr. Reddy both opined, in part, that the Plaintiff could "interact and relate to coworkers and supervisors in [an] environment with low social demand." [T. at 114, 137].

The ALJ found the opinions of Dr. Noles and Dr. Reddy to be persuasive. [Id. at 30]. In her RFC assessment, the ALJ stated that:

> Dr. Keith O. [Noles], the state agency psychological consultant at the initial level, determined that the claimant could perform simple, routine, and repetitive tasks in a low demand and low distraction setting (Ex. 1A). Dr. Vigita Reddy affirmed this determination at reconsideration (Ex. 3A). The undersigned finds [these] prior administrative medical finding[s] persuasive and therefore limited the claimant to work that is unskilled and that does not involve high volume for fast production. The claimant's ability to perform such tasks as opined by the state agency is consistent with mental status exams that have generally shown grossly normal memory (Ex. 9F/4, 11F/5, 12F/3, 22F/24, and 28F/7), and reports of the claimant appearing alert and focused (Ex. 11F/5, 15F/13, 18F/5, and 22F/24). The claimant's ability to perform unskilled tasks is also consistent with his activities of daily living that include cooking, light household chores, and shopping (Hearing Testimony; Ex. 16F/3 and 17F/3-4).

[Id.]. Notably, however, the ALJ failed to discuss Dr. Noles and Dr. Reddy's opinions regarding the Plaintiff's ability to interact with others, leaving the Court to speculate as to whether those portions of the opinions were actually

considered by the ALJ when formulating the Plaintiff's RFC, and if they were considered, how they were considered. The ALJ is not required to discuss every item of evidence in the record when determining the claimant's RFC. Reid v. Comm'r, 769 F.3d 861, 865 (4th Cir. 2014). However, a "reviewing court cannot be left to guess as to how the ALJ arrived at [her] conclusions." Mills, 2017 WL 957542, at *4.

The ALJ's decision is "sorely lacking in the analysis" necessary for the Court to meaningfully review the ALJ's conclusions. Mascio, 780 F.3d at 636-37. While the ALJ recited certain evidence in the record, "it is not sufficient for an ALJ to simply recite *what* the evidence is." Mills, 2017 WL 957542, at *4. Instead, an RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion . . . ." Mascio, 780 F.3d at 636 (quoting SSR 96-8p). As such, this matter must be remanded because the ALJ failed to "build an accurate and logical bridge from the evidence to [her] conclusion." Monroe, 826 F.3d at 189.

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ's decision should include a narrative discussion of the evidence, as required by SSR 96-8p, explaining how she

17

reconciled that evidence to her conclusions. In light of this decision, the Plaintiff's other assignments of error need not be addressed at this time but may be addressed on remand.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 15] is **GRANTED,** and the Defendant's Motion for Summary Judgment [Doc. 18] is **DENIED.** Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 7, 2022

Martin Reidinger
Chief United States District Judge